UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

LIFE INSURANCE COMPANY OF
NORTH AMERICA,

     Plaintiff,

v.                                     Case No: 5:21-cv-384-JSM-PRL

WILLIAM S. SHEEHY, STEPHEN
SPITZER and ZACKERY SPITZER,

     Defendants.

_____

REPORT AND RECOMMENDATION[1]

Life Insurance Company of North America ("LINA") initiated this action by filing a

complaint for Interpleader against Defendants pursuant to Fed. R. Civ. P. 22 and 28 U.S.C.

§ 1331. The underlying dispute arises from claims presented to LINA regarding an employee

benefit life insurance policy for $34,000 on the life of decedent Victoria Spitzer. The insurance

benefit at issue was part of an employee benefit plan under the Employment Retirement and

Income Security Act ("ERISA"). On December 1, 2021, this matter was referred to the

undersigned for preparation of both a Scheduling Order and a Report and Recommendation

regarding an appropriate resolution of the case. (Doc. 15).

Defendant William Sheehy (Decedent's father) has filed a motion for summary

judgment (Doc. 29) requesting that the Court award the total policy benefit to him (via an

---

[1] Within 14 days after being served with a copy of the recommended disposition, a party may
file written objections to the Report and Recommendation's factual findings and legal conclusions.
See Fed. R. Civ. P. 72(b)(3); Fed. R. Crim. P. 59(b)(2); 28 U.S.C. § 636(b)(1)(B). A party's failure to
file written objections waives that party's right to challenge on appeal any unobjected-to factual finding
or legal conclusion the district judge adopts from the Report and Recommendation. See 11th Cir. R.
3-1.

assignment by Stephen Spitzer, one of Decedent's adult sons), and the time for responding has expired. Upon due consideration, I recommend that Defendant Sheehy's motion for summary judgment be granted in part and denied in part, and that the policy benefits be distributed as explained in this report and recommendation.

## I.     Background

The relevant facts in this case are undisputed. Decedent Victoria Spitzer passed away on February 25, 2021, in Ocala, Florida. Prior to her death, Decedent was a participant in an employee benefit plan and had elected coverage under a group life insurance policy, identified as Policy No. FLX-960637. In the event of Decedent's death, the life insurance policy provides for a $34,000 benefit. There appears to be no dispute that Decedent was an eligible and qualified plan participant, that the benefit amount is $34,000, and that the benefit at issue was part of an employee benefit plan within the meaning of ERISA.

Under the terms of the policy, the death benefits will be paid to "the Insured's named beneficiary, if any, on file at the time of payment." (Doc. 1-1 at 14). "If there is no named beneficiary or surviving beneficiary, Death Benefits will be paid to the first surviving class of the following living relatives: spouse; child or children; mother or father; brothers or sisters; or to the executors or administrators of the Insured's estate." (Doc. 1-1 at 14).

As is alleged in the Complaint and is uncontroverted, Decedent did not name any beneficiaries under the subject policy and did not have a spouse at the time of her death. (Doc. 1 at 4). Decedent was survived by two adult sons, Zackery Spitzer and Stephen Spitzer. (Doc. 1 at 2-3). Decedent was also survived by her father, William Sheehy.

In the Complaint, LINA alleges that under the terms of the policy, Decedent's sons "Stephen Spitzer and Zachery Spitzer would be in line to receive the proceeds." LINA further

asserts, however, that William Sheehy "posed a competing claim for the proceeds asserting a right to some or all said proceeds, including a purported attempt to assert a lien on same." (Doc. 1 at 4). Indeed, Sheehy communicated to LINA that he was placing a "lien to withhold/Stop any disbursement to Zachery Spitzer of his portion of the Policy FLX 960637 pending final determination/reconciliation of all expenses required to settle Zackery Spitzer's portion of the Estate." (Doc. 9 at 6). As the record reflects, Sheehy sent LINA (via its representatives at CIGNA Group Insurance) numerous emails purporting to place a lien on the insurance proceeds, asserting that Decedent's sons had waived their "lineal descendants/heirs rights" in favor of him, and representing that he was the Personal Representative of the Decedent's estate. Sheehy also advised LINA that, "[i]f any funds are disbursed to anyone other than the Personal Representative, we will ensure all parties involved are prosecuted to the fullest extent of the law!" (Doc. 9 at 8).

Not surprisingly, this interpleader action ensued. On July 23, 2021, LINA initiated this action by filing a complaint for interpleader against William Sheehy, Stephen Spitzer, and Zackery Spitzer. (Doc. 1). Both Stephen Spitzer and William Sheehy have appeared in this action *pro se*, but Zackery Spitzer has not appeared, and Clerk's default was entered as to him on November 30, 2021. (Doc. 14).

Following a status conference on January 14, 2022, the Court granted LINA's motion to deposit the subject insurance proceeds with the Court, ordered that all parties in privity with LINA, or claiming they are such parties, are permanently enjoined pursuant to 28 U.S.C. § 2361 from making demand or instituting and prosecuting any other proceeding against LINA, in any court, federal or state, for the recovery of all or part of the proceeds of Group Policy Number FLX-960637, released and discharged LINA from any further liability upon

its policy and relative to the death of Victoria Spitzer, and dismissed LINA with prejudice from this cause of action. (Doc. 27).[2] The Court also entered a scheduling order establishing a briefing schedule regarding resolution of the case. (Doc. 24).

On March 28, 2022, William Sheehy filed a motion entitled "Joint Unopposed Motion for Summary Judgment" requesting that the Court determine the rights of the respective defendants, that the Court award the total Policy benefits in the Court's registry to Stephen Spitzer, subject to his Assignment/Stipulation, and that all defendants be permanently enjoined from making demand or instituting future proceedings relative to the proceeds of the subject policy. (Doc. 29 at 3). To clarify, the motion was on behalf of William Sheehy and Stephen Spitzer. In support of the motion, Sheehy attached a notarized and sworn "Assignment of Life Insurance Proceeds" document in which Stephen Spitzer assigns his share of proceeds under the subject policy to William Sheehy, his grandfather. (Doc. 29 at 7). Sheehy also filed a motion for clerk's entry of default, in which he asserts that he attempted to mail the motion for summary judgment to Zackery Spitzer but it was refused, and that Zackery Spitzer "threatened both his brother, Stephen M. Spitzer, and his grandfather, William S. Sheehy, should either attempt to contact him at his place of employment." (Doc. 30). No response was filed to Sheehy's motion for summary judgment, and the time for responding has expired.

Accordingly, the issue of determining the respective rights of the parties under the subject life insurance policy is ripe for resolution by the Court.

---

[2] Counsel for LINA represented at the status conference that LINA would not seek attorney's fees if its motion for interpleader deposit was granted. (Doc. 27).

## II.        Legal Standards

### A.        Interpleader Standards

It is well-settled that district courts have broad and significant powers in an interpleader action. *Wachovia Bank, N.A. v. Tien*, 534 F.Supp.2d 1267, 1285 (S.D. Fla. 2007). Interpleader actions are designed to protect stakeholders from harassment in the face of multiple claims against the same fund, and to relieve the stakeholder from assessing which claim, among many, has merit. *State Farm Fire & Casualty v. Tashire*, 386 U.S. 523, 534 (1967). The purpose of an interpleader action is to "allow the contesting parties to have their rights determined in a court of equity so as to protect the plaintiff from double liability, and to preserve the rights of any claimant to the fund ...." *Johnson v. Johnson*, 139 F.2d 930, 933 (5th Cir.1943). And, the Supreme Court has stated that the federal interpleader statute "is remedial and to be liberally construed." *Tashire*, 386 U.S. at 533.

An interpleader action typically involves two stages. In the first stage, the district court decides whether the requirements for a rule or statutory interpleader action have been met by determining if there is a single fund at issue and whether there are adverse claimants to that fund. *Star Insurance Co. v. Cedar Valley Express*, LLC, 273 F.Supp.2d 38, 41 (D.D.C.2002). District courts addressing the first phase of an interpleader action may also determine if the stakeholder is disinterested and, if so, discharge it from liability and dismiss it from the action. This practice is particularly common in cases involving competing claims to life insurance proceeds where the interpleading insurers – as disinterested stakeholders – deposit the res into the court's registry and request immediate dismissal from the action. *See e.g., John Alden Life Ins. Co. v. Vanlandingham*, 2006 WL 1529047 at *5 (M.D.Fla. May 30, 2006) (granting plaintiff's motion for interpleader and fees and noting that plaintiff, as a disinterested

stakeholder, was entitled to early dismissal from case with prejudice); *Dunn v. Harris Corp.*, 560 F.Supp.2d 1260, 1262 (M.D. Fla. 2008) (noting that disinterested stakeholder's motion for interpleader was granted and that stakeholder was entitled to be dismissed from case).

The second phase of an interpleader action involves adjudication of the ownership rights to the interpleaded funds. *See Orseck, P.A. v. Servicios Legales De Mesoamerica S. De R.L.*, 699 F. Supp. 2d 1344, 1346 (S.D. Fla. 2010) (describing the adjudication of the ownership rights to the interpleaded funds as the second phase of the interpleader action). It is well-established that interpleader is a form of action originally developed under equity jurisprudence and that a district court has broad and significant powers in an interpleader action. If the district court finds that the interpleader action has been properly brought, the court will then make a determination of the respective rights of the claimants. *See Wachovia Bank, N.A. v. Tien*, 534 F. Supp. 2d 1267, 1284–85 (S.D. Fla. 2007) (citing 7 WRIGHT, MILLER & KANE, FEDERAL PRACTICE & PROCEDURE: CIVIL 2d § 1714 (1986))*.

Once interpleader is granted and the issues are framed between the respective party defendants, each defendant occupies the position of a plaintiff and must state his or her own claim and answer that of the other. *Tien,* 534 F. Supp. 2d at 1284*, citing Reconstruction Finance Corp., v. Aquadro*, 7 F.R.D. 406, 409 (D.C. Pa. 1947) ("It does not matter which one of the defendants would be designated as the plaintiff in the interpleader since each must establish his own claim."). If there is no genuine issue of material fact, the second stage may be adjudicated at summary judgment, and if there is a trial each claimant must prove his or her right to the fund by a preponderance of the evidence. *Id*. The second stage is "ultimately resolved by the entry of a judgment in favor of the claimant who is lawfully entitled to the stake." *NYLife Distributors, Inc. v. Adherence Group, Inc.*, 72 F.3d 371, 375 (3d Cir.1995) (citing

*Diamond Shamrock Oil & Gas Corp. v. Commissioner of Revenues*, 422 F.2d 532, 534 (8th Cir.1970)).

### B.      Summary Judgment Standard

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, the Court reviews "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits." *Crawford v. Carroll*, 529 F.3d 961, 964 (11th Cir. 2008). The Court considers the "evidence and reasonable factual inferences drawn therefrom in a light most favorable to the non-moving party." *Id.* The moving party bears the initial burden of establishing the nonexistence of a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant is successful on this score, the non-moving party must then come forward with sufficient evidence to establish the existence of the elements on which she will bear the burden of proof at trial. *Id.* at 322-23. The non-moving party may not simply rest on the pleadings, but must use evidence such as affidavits, depositions, answers to interrogatories, or admissions on file to show that there is a genuine issue of material fact that remains for trial. *Id.* at 324.

### C.      *Pro Se* Standards

In considering the appropriate legal standards, the Court also notes that the Defendants in this case are appearing *pro se*. "[P]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). However, "a *pro se* litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment."

*Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Although courts show leniency to *pro se* litigants, courts "will not serve as *de facto* counsel or 'rewrite an otherwise deficient pleading in order to sustain an action.'" *Nalls v. Coleman Low Fed. Inst.*, 307 Fed. Appx. 296, 298 (11th Cir. 2009) (*quoting GJR Invs., Inc. v. Cnty. of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998)).

## III.    Discussion

This case is currently at the second stage of the interpleader action and the matter is ripe for adjudication of the respective rights of the parties. The remaining parties are the three defendants, Zackery Spitzer (who has not appeared and as to whom Clerk's default has been entered), William Sheehy, and Stephen Spitzer (who are both appearing *pro se)*. These same individuals are also the claimants to the interpleaded funds. William Sheehy has filed a motion for summary judgment on behalf of himself and Stephen Spitzer, and Zackery Spitzer has not responded to the motion. Nonetheless, on the record before the Court, determining the parties' respective rights to the interpleaded funds is a relatively straightforward matter.

Under both Florida law and federal common law regarding ERISA, insurance contracts are construed in accordance with the plain language of the policies. *See Smith v. Cont'l Cas. Co.*, 616 F.Supp.2d at 1296 (construing the terms of an ERISA policy and stating, "[w]e first look to the plain and ordinary meaning of the policy terms to interpret the contract.") (citing *Bedinghaus v. Modern Graphic Arts*, 15 F.3d 1027, 1029–30 (11th Cir.1994)); see also *Billings v. UNUM Life Ins. Co. of Am.*, 459 F.3d 1088, 1094–95 (11th Cir. 2006). Likewise, "Florida law provides that insurance contracts are construed in accordance with the plain language of the policies as bargained for by the parties." *Auto–Owners Ins. Co. v. Anderson*, 756 So.2d 29, 34 (Fla.2000). Where language in a policy is plain and unambiguous, there is no special construction or interpretation required, and the plain language in the

contract is to be given the meaning which it clearly expresses. *Jefferson Ins. Co. of N.Y. v. Sea World of Fla., Inc.,* 586 So.2d 95, 97 (Fla. 5th DCA 1991).

In this case, it is undisputed that there was no named beneficiary, that Decedent did not have a surviving spouse, and that Decedent was survived by two adult sons, Zackery and Stephen Spitzer. Consequently, the following contract provision controls the payment of the death benefits: "Death benefits will be paid to the first surviving class of the following living relatives: spouse, child or children; mother or father; brother or sisters; or to the executors or administrators of the Insured's estate." (Doc. 1-1 at 17). Under the plain and unambiguous language of the policy, the death benefits are payable to Decedent's child or children. In other words, under the express terms of the subject policy, Zackery Spitzer and Stephen Spitzer are entitled to equal shares of the death benefit of $34,000.

Meanwhile, Decedent's father, William Sheehy, has advanced various theories upon which he believes he is entitled to the funds, but his claims are without merit.

First, despite his contentions, Sheehy's status as the Personal Representative of the Estate of Victoria Spitzer does not entitle him to the life insurance proceeds, even if he had been appointed as such. Previously, Sheehy represented himself as the Personal Representative, and, in correspondence to LINA (via Cigna Group Insurance), claimed a right to the proceeds: "I do NOT see any legal issue preventing the PR (William Stephen Sheehy) to be considered the beneficiary as the evidentiary intent noted in the signed and notarized Cigna/New York Life Preference Beneficiary's Affidavit and Disclosure Authorization." (Doc. 9 at 7). Referencing two "Consent to Appointment of Personal Representative and Waiver of Notice and Bond" documents executed by Stephen and Zackery Spitzer (Doc. 9 at 3-4), Sheehy also wrote to LINA, "The two PR documents waive

both of my grandsons lineal descendants/heirs rights to their grandfather, William Stephen

Sheehy." Needless to say, Sheehy's interpretation of the Consent to Appointment of Personal

Representative documents is incorrect and has no bearing on the contractual provisions of the

life insurance policy. The documents referenced by Sheehy merely represent Stephen and

Zackery Spitzer's consent to Sheehy being appointed as Personal Representative of the estate.

(Doc. 9 at 3-4). The language of those documents does not contain any waiver as to other

rights, such as their rights to life insurance or inheritance as heirs of Decedent.

In any event, Sheehy now concedes that he is not actually the Personal Representative

because he was never appointed as such by the probate court. (Doc. 9 at 1). And, even if he

had been appointed, under the plain language of the insurance policy, the "executors or

administrators of the Insured's estate" would only be entitled to the benefit in the absence of

the proceeding classes of living relatives. (Doc. 1-1 at 17).

Sheehy has also argued that he is entitled to the death benefit because he incurred

expenses related to his daughter's death and that the intention of life insurance is to ensure

the Decedent's debts are paid. Whether Sheehy paid expenses on behalf of the Decedent or

related to her death is a separate matter from the contractual provisions of the subject life

insurance policy. In Florida, the proceeds of life insurance are statutorily protected from

creditors. Florida Statute § 222.13(1) provides:

> Whenever any person residing in the state shall die leaving
> insurance on his or her life, the said insurance shall inure
> exclusively to the benefit of the person for whose use and benefit
> such insurance is designated in the policy, and the proceeds
> thereof shall be exempt from the claims of creditors of the insured
> unless the insurance policy or a valid assignment thereof
> provides otherwise.

*See also* § 8:11, FLORIDA, 1 ASSET PROTECTION: DOM. & INT'L L. & TACTICS § 8:11 ("The proceeds of life insurance policies under Florida law are exempt from the claims of creditors of the insured unless the insurance policy or a valid assignment of the insurance policy provides otherwise."), citing *Milam v. Davis*, 97 Fla. 916, 123 So. 668 (1929).

As to Sheehy's argument that he has a lien against Zackery Spitzer's share of the insurance proceeds, that argument is unavailing as well. As best can be discerned from the record and from Sheehy's own allegations, this case arises in the context of a family dispute. Many of Sheehy's grievances regarding Zackery Spitzer are referenced in the correspondence he sent to LINA, and Sheehy's animosity toward Zackery is evident. (Doc. 9 at 5-8). It appears that, at the time of Decedent Victoria Spitzer's death, she owned a residence (46 Pine Court Drive) jointly with Sheehy. Sheehy contends that Zackery "withheld his funeral rights and thus prevented his mother being laid to rest given he was 'next of kin.'" (Doc. 9 at 5). Sheehy also contends that he was obliged to have Zackery evicted (presumably from the residence at 46 Pine Court Drive), that Zackery sold personal property without authorization, and that he purposely destroyed property. Sheehy purports to have a lien against the life insurance proceeds to recover funeral expenses, probate and "ejection" attorney's fees, repairs, and related expenses.

The Court notes that, to the extent that Sheehy contends he has a valid lien or claim against Zackery for items such as reimbursement for funeral expenses, attorney's fees, or expenses associated with the residence at 46 Pine Court, he has not supported those assertions with appropriate documentation under Rule 56 of the Federal Rules of Civil Procedure, such as by citing to depositions, documents, affidavits or declarations. But even assuming Sheehy's contentions are true for the sake of this analysis, the existence of a valid claim or debt owed

to Sheehy by Zackery does not impact the Court's determination regarding the entitlement to the insurance policy benefit.

Notably, Sheehy has not filed a crossclaim in this matter against Zackery regarding the numerous grievances he has mentioned. Even if he had, such a claim would be one over which the Court would (at best) have only supplemental jurisdiction under 28 U.S.C. § 1367. And, even if Sheehy had properly asserted such a claim (which he has not), the Court should decline supplemental jurisdiction under 28 U.S.C. § 1367(c). Further, as observed above, such a claim would be defeated by Fla. Stat. § 222.13.

To the extent that Sheehy makes a moral argument that he is entitled to Zackery's share of the insurance proceeds because Sheehy paid funeral expenses and incurred expenses to settle the Decedent's estate, that argument is also unavailing. As already observed, such issues are of no consequence to the provisions of the life insurance contract between Decedent and LINA.

Finally, that a Clerk's default has been entered as to Zackery Spitzer and that he has failed to appear in this action does not provide a rationale for the Court to award the full amount of the death benefit to his brother, Stephen (who, in turn, has assigned his share to Sheehy). The effect of the entry of a default is that all of the factual allegations in the complaint are taken as true, save for the amount of unspecified damages. Thus, if liability is well-plead in the complaint, it is established by the entry of a default. *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987). A court may enter a default judgment only if the factual allegations of the complaint provide a sufficient legal basis for entry of a default judgment. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

Here, the allegations of the interpleader complaint filed by LINA are consistent with the Court's finding that Zackery and Stephen Spitzer are entitled to the proceeds of the life insurance policy. Indeed, in the Complaint, LINA described the relevant provisions of the insurance contract and then alleged:

> The Decedent did not name any beneficiaries under the subject Policy. Upon information and belief, Decedent did not have a spouse at the time of her death. As such, Defendants Stephen Spitzer and Zachery Spitzer would be in line to receive the proceeds.

(Doc. 1 at 4). To the extent that Zackery Spitzer's default results in the above allegation being taken as true is consistent with the Court's determination regarding entitlement to the policy proceeds.[3]

## IV.   Recommendation

For the reasons explained above, I recommend that:

1. The Court should determine that, under the terms of the subject life insurance policy, as the first surviving class of living relatives of Victoria Spitzer, Stephen Spitzer and Zackery Spitzer are entitled to equal shares of the $34,000 life insurance policy proceeds.

2. In accordance with the Assignment of Life Insurance Proceeds (Doc. 10-5) executed by Stephen Spitzer, Stephen Spitzer's portion of the life insurance proceeds ($17,000) should be directly paid to William Sheehy.

---

[3] When viewed in context of the overall circumstances, including the litany of grievances Sheehy has against his grandson Zackery Spitzer, Zackery's failure to appear in this case is, perhaps, not surprising. It is plausible that Zackery viewed this action as a vehicle by which he could become liable for the numerous claims referenced by Sheehy, as opposed to a straightforward clarification of entitlement to the life insurance proceeds.

3.  William Sheehy's motion for summary judgment (Doc. 29) should be granted to the extent that Stephen Spitzer's $17,000 share of the insurance policy proceeds is payable to him, but should be denied in all other respects.

4.  All parties in privity with Life Insurance Company of North America, or claiming they are such parties, as well as all parties to this action including William Sheehy, Zackery Spitzer, and Stephen Spitzer and anyone acting on their behalf, should be permanently enjoined pursuant to 28 U.S.C. § 2361 from making claim or demand, or instituting and prosecuting any other proceeding in any court, federal or state, for the recovery of all or part of the proceeds of Group Policy Number FLX-960637.

Recommended in Ocala, Florida on June 3, 2022.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy